**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ANNIE LOIS HURST,

                Plaintiff,

vs.                                          Case No.  3:06-cv-67-J-MMH

MICHAEL J. ASTRUE,[1] Commissioner of
the Social Security Administration,

                Defendant.
_____/

## OPINION AND ORDER[2]

**THIS CAUSE** is before the Court on Plaintiff's Complaint (Dkt. No. 1; Complaint) seeking review of the final decision of the Commissioner of Social Security (Commissioner) denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act. Administrative remedies have been exhausted, and the case is properly before the Court.

---

    [1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    [2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Order of Reference (Dkt. No. 11).

## I.     Background

At the time of the administrative hearing, Plaintiff was forty-two years old and living in a house with three of her children. See Tr. at 420.³ She had completed the eleventh grade and was taking classes in order to obtain her general equivalency diploma (GED). Id. at 420, 424. Plaintiff previously worked as a fast food worker, hand packager, merchandise price marker, general laborer, diet aide, laundry worker, and mail sorter. Id. at 15, 69, 434-35. Plaintiff filed applications for DIB and SSI on August 22, 2003, alleging a disability onset date of April 26, 2003. Id. at 50-52, 405-06. In her disability report, Plaintiff asserted that she suffers from the following impairments: (1) "heart"; (2) diabetes; (3) high blood pressure; (4) "blood clot around [her] lungs [which] cause[s] short[ness] of breath"; (5) "bad leg[s]"; (6) dizziness which affects her vision; (7) poor circulation which causes leg pains; (8) limping; and (9) "pressure to [her] heart." Id. at 60. Plaintiff also indicated that she experiences shoulder and neck pains. Id.

After the applications were denied initially, see id. at 25, 27-29, 407, 408-10, and on reconsideration, see id. at 26, 32-34, 411, 412-14, Administrative Law Judge (ALJ) Robert Droker conducted a hearing on May 24, 2005, see id. at 416-438. Plaintiff, who was represented by a non-attorney, testified at the hearing as did a vocational expert (VE), Robert Bradley. See id. at 10, 416-38. Plaintiff testified that she is unable to work because she can barely stand up and walk without falling down and parts of her body "go numb." Id. at 421. Plaintiff further testified that she has a difficult time using her hands because they

---

³ The Transcript of Administrative Proceedings (Tr.) was filed on April 24, 2006, as an appendix to Defendant's Answer (Dkt. Nos. 7, 8).

turn yellow. Id. On September 8, 2005, the ALJ denied Plaintiff's applications, finding that Plaintiff was not disabled because she was capable of performing a significant range of sedentary and light work, including the positions of photograph finisher, ticket printer and tagger, shipping and receiving weigher, lacer (boot and shoe), and assembler. Id. at 15-24, 436. The Appeals Council denied Plaintiff's request for review on November 25, 2005. Id. at 5-7. Consequently, the Commissioner's decision became final. See Sims v. Apfel, 530 U.S. 103, 106-07, 120 S.Ct. 2080, 2083, 147 L.Ed.2d 80 (2000). Plaintiff timely filed the Complaint on January 23, 2006. Complaint at 1.

**II.    Standard of Review**

"Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations.[4] See 20 C.F.R. §§ 404.1520(a),

---

[4]     The inquiry requires the ALJ to engage in a five-step analysis (the "Sequential Evaluation Process"), which will either preclude or mandate a finding of disability. The steps are as follows:
    Step 1. Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.
    Step 2. Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.
    Step 3. Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. If not, the next question must be resolved.
    Step 4. Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.
(continued...)

416.920(a). While the claimant generally bears the burden to prove that he or she is disabled, see 20 C.F.R. §§ 404.1512(a), 416.912(a), the burden shifts to the Commissioner at step five to show that the claimant can perform other work in the national economy. See Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995) (per curiam).

The Commissioner's final decision may be reviewed by a district court pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). It is well established, however, that review is limited to "whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam); see also Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam); Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003) (per curiam). It does not include "deciding the facts anew, making credibility determinations, or re-weighing the evidence." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam); see also Dyer, 395 F.3d at 1210; Foote, 67 F.3d at 1560.

The Commissioner's factual findings must be affirmed if they are supported by substantial evidence, "even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision." Johnson v. Barnhart, 268 F. Supp. 2d 1317, 1321 (M.D. Fla. 2002), aff'd, No. 02-16464, 2003 WL 21283493 (11th Cir. May 22, 2003) (unpublished table

---

[4](...continued)
Step 5. Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§ 404.1520(a)-(f); 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

decision); see also Dyer, 395 F.3d at 1210; Shinn ex rel. Shinn v. Comm'r of Soc. Sec., 391 F.3d 1276, 1282 (11th Cir. 2004); Ellison, 355 F.3d at 1275; cf. Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998) ("An ALJ's decision will be reversed only if the decision is not supported by substantial evidence."). Substantial evidence has been defined as "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (quoting Falge, 150 F.3d at 1322); see also Ellison, 355 F.3d at 1275; Foote, 67 F.3d at 1560. It is more than a scintilla but less than a preponderance of evidence. See Dyer, 395 F.3d at 1210; Ellison, 355 F.3d at 1275. In determining whether substantial evidence supports a finding, portions of the transcript may not be viewed in isolation, but rather must be examined as part of the record as a whole. See Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Foote, 67 F.3d at 1560.

On the other hand, no deference is accorded to the Commissioner's application of legal standards. See Moore, 405 F.3d at 1211; Lewis v. Barnhart, 285 F.3d 1329, 1330 (11th Cir. 2002) (per curiam); Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). The application of legal standards is closely scrutinized. See Doughty, 245 F.3d at 1278. Indeed, where the Commissioner has used incorrect legal standards or failed to explain her decision adequately and the reviewing court is unable to determine whether the correct law has been applied, then the court will reverse the decision. See Johnson, 268 F. Supp. 2d at 1321; see also Foote, 67 F.3d at 1558.

### III.     Summary of Argument

Plaintiff raises two related issues on appeal. See Plaintiff's Initial Brief (Dkt. No. 15; Brief) at 14-16.  First, Plaintiff argues that the ALJ failed to apply Social Security Ruling (SSR) 02-01p in evaluating her morbid obesity.  See id. at 14-15.  Second, Plaintiff asserts that the ALJ posed an incomplete hypothetical question to the VE by not including Plaintiff's morbid obesity.  Id. at 15-16.

### IV.     Discussion

#### A.     Substantial Impairments

Plaintiff first argues that the ALJ erred by failing to apply SSR 02-01p in evaluating her morbid obesity. Id. at 14-15.  Specifically, Plaintiff asserts that, although the ALJ found Plaintiff's morbid obesity to be a severe impairment, he failed to discuss the combined effect of Plaintiff's morbid obesity and her other impairments on her physical functioning. Id. at 14. Plaintiff also notes that Dr. Peter Knox, a psychological consultative examiner, stated that her "obesity will affect her bending and kneeling." Id. at 14-15, 171.

Social Security Ruling 02-01p recognizes that "[o]besity is a risk factor that increases an individual's chances of developing impairments in most body systems," including the cardiovascular, respiratory, and musculoskeletal systems.  See SSR 02-01p.  Ruling 02-01p also observes that obesity often leads to and complicates chronic diseases, such as diabetes mellitus, hypertension, and heart disease, and causes or contributes to mental impairments. Id.  Accordingly, SSR 02-01p directs an ALJ to consider obesity during the Sequential Evaluation Process.  See id.  Specifically, SSR 02-01p instructs an ALJ to consider obesity in determining whether: (1) "[t]he individual has a medically determinable impairment";

(2) "[t]he individual's impairment(s) is severe"; (3) "[t]he individual's impairment(s) meets or equals the requirements of a listed impairment in the listings"; and (4) "[t]he individual's impairment(s) prevents him or her from doing past relevant work and other work that exists in significant numbers in the national economy." Id.  In regard to Step Three of the Sequential Evaluation Process, SSR 02-01p notes that, although the Social Security Administration has deleted the applicable listing for obesity, the prefaces for other listings, such as the prefaces to the listings for the musculoskeletal, respiratory, and cardiovascular body systems, have been changed in order to ensure that ALJs consider the effects obesity may have "in causing or contributing to impairments in those body systems." Id. Indeed, SSR 02-01p remarks that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." Id. Thus, SSR 02-01p provides that an individual with obesity can meet the requirements of a listing by having another impairment that either meets the requirements of a listing individually or in combination with obesity. Id.

With respect to Steps Four and Five of the Sequential Evaluation Process, SSR 02-01p observes that obesity may affect an individual's ability to perform exertional functions, such as sitting, standing, walking, lifting, carrying, pushing, and pulling. See id. Social Security Ruling 02-01p also notes that obesity may also affect an individual's ability to perform postural functions, such as climbing, balancing, stooping, and crouching. See id. Lastly, it provides that obesity may affect an individual's "ability to manipulate" with their hands and fingers and "ability to tolerate extreme heat, humidity, or hazards". Id.

In the instant case, the ALJ found that Plaintiff suffered from the following severe impairments: (1) coronary artery disease; (2) insulin dependent diabetes mellitus; (3) hypertension; (4) obesity; (5) affective disorder; (6) organic mental disorder; (7) anxiety disorder; and (8) status-post drug and alcohol abuse. See Tr. at 17. The ALJ further found that, "[a]lthough these impairments are 'severe' within the meaning of the Regulations, they are not 'severe' enough to meet or medically equal, either sing[ular]ly or in combination[,] [sic] one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." Id. In determining whether Plaintiff retained the ability to perform the requirements of her past relevant work or whether Plaintiff can adjust to other work, the ALJ found that Plaintiff retained the following residual functional capacity (RFC):

> sedentary or light level work with a sit-stand option in 30 minute cycles, occasional bending, crouching, kneeling, stooping, squatting with no exposure to ladders or unprotected heights, no proximity to heavy moving machinery, no exposure to concentrated dust, fumes, or gases; no unusual stress; low stress; simple tasks; avoid (limited) contact with the public; avoid walking on slippery or uneven surfaces.

Id. at 20-21. The ALJ noted that, although the VE testified that Plaintiff was not capable of performing any of her past work, the VE also testified that Plaintiff was capable of performing the requirements of several light and sedentary jobs. Id. at 21-22. Based on this testimony, the ALJ found that Plaintiff was not disabled. Id. at 22.

Upon review of the ALJ's decision, the undersigned finds that the ALJ properly considered SSR 02-01p during the Sequential Evaluation Process. The ALJ noted that Dr. Thao X. Le, a physical consultative examiner, diagnosed Plaintiff with several conditions, including obesity. See id. at 17. At Step Two of the Sequential Evaluation Process, the ALJ found that Plaintiff's obesity constituted a severe impairment. See id. Next, the ALJ determined, at Step Three of the Sequential Evaluation Process, that none of Plaintiff's

impairments were severe enough, either singularly or in combination, to meet or equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  See id.  Notably, Plaintiff has not asserted that her obesity, either singularly or in combination with her other impairments, meets or equals the criteria of any specific listing.  See generally Brief.

In determining, at Steps Four and Five of the Sequential Evaluation Process, whether Plaintiff retained the ability to perform either her past relevant work or other work that exists in significant numbers in the national economy, the ALJ did not specifically discuss how Plaintiff's obesity impacted her RFC.  See Tr. at 15-24.  Nevertheless, upon review of the ALJ's decision, it is clear that the ALJ considered Plaintiff's obesity in determining her RFC.  See Hennes v. Commissioner of Social Security Administration, 130 Fed. Appx. 343, 348 n.11 (11th Cir. 2005) (noting that, although an ALJ did not specifically discuss how a claimant's obesity affected her subjective complaints of pain and RFC, precedent did not require the ALJ to specifically refer to every piece of evidence in his or her decision as long as the Court is able to conclude, upon review of the ALJ's decision, that the ALJ considered the claimant's medical condition as a whole).  Indeed, the ALJ included in Plaintiff's RFC many of the exertional, postural, and environmental limitations that SSR 02-01p associates with obesity, namely, limitations associated with sitting and standing, crouching, stooping, and exposure to hazards.  See id. at 20-21; see also SSR 02-01p.  The ALJ also listed other exertional and postural limitations in Plaintiff's RFC that, although not specifically referenced in SSR 02-01p, may have been included by the ALJ on account of Plaintiff's obesity, such as limitations associated with bending, kneeling, squatting, and walking on slippery or

-9-

uneven surfaces.  See Tr. at 20-21; see also SSR 02-01p (noting that obesity can cause limitations in exertional and postural functions).

Moreover, the Court notes that the Eleventh Circuit has held that an ALJ properly considered the plaintiff's alleged impairments in combination when the ALJ stated that "'based upon a thorough consideration of all evidence, the ALJ concludes that appellant is not suffering from an impairment, or combination of impairments of sufficient severity to prevent her from engaging in any substantial gainful activity . . . '" Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986) (per curiam) (emphasis in original).  In the instant case, the ALJ stated, in determining Plaintiff's RFC, that he must consider the Plaintiff's testimony, all of her alleged symptoms, the extent to which Plaintiff's symptoms are consistent with the objective medical evidence and other evidence, and "any medical opinions . . . which reflect judgments about the about the nature and severity of the impairments and resulting limitations . . ." Tr. at 18.  The ALJ also specifically acknowledged that he must consider all medically determinable impairments in Steps Three, Four and Five of the sequential evaluation.  Thus, the Court finds that the ALJ considered all of Plaintiff's impairments in combination.  See Wheeler, 784 F.2d at 1076.

In addition, upon review of Plaintiff's medical record, the Court cannot say that the ALJ failed to include limitations attributable to Plaintiff's obesity.  The Court observes that, while Dr. Le diagnosed Plaintiff with obesity, he did not indicate that Plaintiff's obesity affected her functional capacity.  See Tr. at 161-64; see also Rickman v. Barnhart,  No. 4:05CV00032, 2006 WL 220157, at *3 (W.D. Va. Jan. 30, 2006) (noting, in rejecting a claimant's argument that an ALJ failed to properly evaluate her obesity in determining her

RFC, that none of the claimant's treating sources indicated that her obesity seriously impaired her functional capacity).  The Court also notes that, upon review of Plaintiff's medical records, Dr. Nicholas H. Bancks, a nonexaming physician, found that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk approximately 6 hours in an 8-hour workday, and sit approximately 6 hours in an 8-hour workday.  See id. at 174, 180.  He also opined that Plaintiff's ability to push and/or pull was unlimited.  See id. at 174.  Dr. Bancks further determined that Plaintiff could occasionally balance and frequently climb, stoop, kneel, crouch, and crawl.  See id. at 175.  He found that Plaintiff's medical record did not establish that she had any manipulative or environmental limitations other than a need to avoid concentrated exposure to hazards.  Id. at 176-77.  Thus, it appears that the RFC provided by the ALJ included greater limitations than those found by Dr. Bancks.  See id. at 20-21; 174-77.  In regard to Plaintiff's contention that Dr. Knox stated that her "obesity will affect her bending and kneeling," the Court observes that Dr. Knox, in fact, stated that "[i]t seems that [Plaintiff's] obesity will affect her bending and kneeling, etc."  Id. at 171.  Further, because Dr. Knox is a psychological consultative examiner, it is unlikely that Dr. Knox actually performed a physical examination of Plaintiff.  Instead, it appears that this statement was solely based on Dr. Knox's general observation of Plaintiff.  See id. at 167-72.  In any event, as noted above, the ALJ included limitations relating to bending and kneeling in Plaintiff's RFC.  See id. at 20.

Finally, the Court observes that Plaintiff did not indicate in either her disability report or during her testimony that her obesity imposed any functional impairment.  See id. at 60, 418-433; see also James v. Barnhart, 177 Fed. Appx. 875, 878 n.2 (11th Cir. 2006) (noting,

in finding that an ALJ did not err by failing to find that a claimant's obesity was a severe impairment, that the claimant did not assert that her obesity was a functional impairment). Indeed, in her Brief, Plaintiff again fails to explain exactly how her obesity affects her ability to work. See Brief at 14-15. Accordingly, the Court declines to find that the ALJ failed to apply SSR 02-01p properly in evaluating Plaintiff's obesity.

### B. Hypothetical Question

Plaintiff also argues that, because the ALJ did not explicitly discuss, in his decision, the effect Plaintiff's morbid obesity had on her ability to work, it is unclear whether any of the physical limitations that the ALJ included in the hypothetical question posed to the VE were attributable to Plaintiff's morbid obesity. Brief at 15.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson, 284 F.3d at 1227; see also Loveless v. Massanari, 136 F. Supp. 2d 1245, 1250 (M.D. Ala. 2001). However, specific diagnostic terms need not be used so long as "other descriptive terms adequately describe the claimant's impairments." Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999) (citing Roe v. Chater, 92 F.3d 672, 676 (8th Cir. 1996)). Further, hypothetical interrogatories need not include impairments properly rejected by the ALJ. See McSwain v. Bowen, 814 F.2d 617, 620 n.1 (11th Cir. 1987) (per curiam).

In the case before the Court, the ALJ propounded two hypothetical questions to the VE. See Tr. at 435-36. The ALJ first posed the following hypothetical to the VE:

> Assume I find that the claimant is 42 years old and has an eleventh grade special education. Assume further I find that she could perform light work but is further limited by the following exertional and non-exertional impairments. She needs to avoid ladders and unprotected heights. She

> needs to avoid the proximity to heavy moving machinery. She needs a low stress work environment. She can only occasionally bend, stoop, crawl, kneel, or crouch, and she needs simple tasks.
>
> She needs to avoid walking on slippery or uneven surfaces, and limited contact with the public. She needs a sit and stand option on 30 minute cycles.

Id. at 435. The VE responded that, based on the above hypothetical, Plaintiff was not capable of performing her past work. Id. The ALJ next posed the following hypothetical question to the VE:

> Let's go down to entry level, and assume the claimant has no skills or semi-skills at all, and that she is the age I previously described, and has the work experience and education previously stated. Assume further that she could perform light work and has the exertional and non-exertional limitations I originally described.

Id. at 435. The VE found, based on the above hypothetical, that Plaintiff was capable of performing the light level positions of photograph finisher, ticket printer and tagger, and shipping and receiving weigher. Id. at 436. The VE further found that Plaintiff was capable of performing the sedentary level positions of lacer and assembler. Id.

The Court notes that the ALJ included the same functional limitations in both the hypothetical question that he posed to the VE and the RFC he outlined in his decision. See id. at 435-36. As stated supra, while the ALJ did not specifically reference Plaintiff's obesity in Plaintiff's RFC, it is apparent that he considered Plaintiff's obesity in determining her RFC because he included many of the limitations that SSR 02-01p associates with obesity in Plaintiff's RFC. See Warburton, 188 F.3d at 1050. Accordingly, the hypothetical question posed to the VE was proper. As the undersigned concludes that the hypothetical question

was complete, the VE's testimony constitutes substantial evidence which was properly relied upon by the ALJ.  See Wilson, 284 F.3d at 1227

### V.     Conclusion

In accordance with the foregoing, it is hereby **ORDERED**:

1. The Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and § 1383(c)(3) **AFFIRMING** the Commissioner's decision.

2. The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 16th day of February, 2007.

*Marcia Morales Howard*
**MARCIA MORALES HOWARD**
United States Magistrate Judge

lc3

Copies to:

Counsel of Record